|  |  |
|---|---|
| **UNITED STATES BANKRUPTCY COURT** | FOR PUBLICATION |
| **SOUTHERN DISTRICT OF NEW YORK** |  |

-----------------------------------------------------------------x
:
In re                                                            :     Chapter 11
:
**EXTENDED STAY INC.**, *et al.*,                                :     Case No. 09-13764 (JMP)
:
                    **Debtors.**     :     **(Jointly Administered)**
:
:
-----------------------------------------------------------------x
:
**BANK OF AMERICA, N.A., WACHOVIA**                              :     Adv. Proc.
**BANK, N.A., MERRILL LYNCH MORTGAGE**                           :     No. 09-01353 (JMP)
**LENDING, INC., U.S. BANK, NATIONAL**                           :
**ASSOCIATION, AS TRUSTEE FOR MAIDEN**                           :
**LANE COMMERCIAL MORTGAGE**                                     :
**BACKED SECURITIES TRUST 2008-1, DEBT**                         :
**II ESH, L.P., DEBT-U ESH, L.P. and KEYBANK**                   :
**NATIONAL ASSOCIATION,**                                        :
:
                    **Plaintiffs**   :
:
                    v.             :
:
**LIGHTSTONE HOLDINGS, LLC and**                                 :
**DAVID LICHTENSTEIN,**                                          :
:
                    **Defendants.**  :
:
-----------------------------------------------------------------x
:
**FIVE MILE CAPITAL II SPE ESH LLC,**                            :     Adv. Proc.
:     No. 09-01367 (JMP)
                    **Plaintiff,**   :
:
`                v.                        :
:
**CERBERUS CAPITAL MANAGEMENT, L.P.,**                           :
**CENTERBRIDGE PARTNERS, L.P., THE**                             :
**BLACKSTONE GROUP, INC., AND GEM**                              :
**CAPITAL MANAGEMENT, INC.,**                                    :
:
                  **Defendants.**  :
-----------------------------------------------------------------x

```
-----------------------------------------------------------------x
                                                  :
LINE TRUST CORPORATION LTD. and                   :   Adv. Proc.
DEUCE PROPERTIES LTD.,                            :   No. 09-01354 (JMP)
                                                  :
                Plaintiffs,                       :
                                                  :
`               v.                                :
                                                  :
DAVID LICHTENSTEIN, LIGHTSTONE                    :
HOLDINGS LLC, WELLS FARGO BANK, N.A.,             :
in its capacity as trustee, WACHOVIA              :
BANK, N.A., BANK OF AMERICA, N.A.,                :
U.S. BANK NATIONAL ASSOCIATION,                   :
CERBERUS CAPITAL MANAGEMENT, L.P.,                :
CENTERBRIDGE PARTNERS, L.P., AND                  :
JOHN DOES 1-20, being persons whose identities    :
are presently unknown to Plaintiffs and who are   :
acting as Supporting Holders of the Term Sheet    :
proposed by Lichtenstein,                         :
                                                  :
                Defendants.                       :
-----------------------------------------------------------------x
```

## MEMORANDUM DECISION

WEIL, GOTSHAL & MANGES LLP
Attorneys for Debtors and Debtors in Possession
767 Fifth Avenue
New York, NY 10153

    Howard B. Comet, Esq.

HAHN & HESSEN LLP
Attorneys for Creditors' Committee
488 Madison Avenue
New York, NY 10022

    Joseph Orbach, Esq.

KAYE SCHOLER LLP
Attorneys for Bank of America, N.A. and Merrill Lynch Mortgage Lending, Inc.
425 Park Avenue
New York, NY 10022

    H. Peter Haveles, Jr., Esq.

MORRISON & FOERSTER LLP
Attorneys for Wachovia Bank, N.A.
1290 Avenue of the Americas
New York, NY 10104

    Rachel M. Wertheimer, Esq.

CLEARY, GOTTLIEB, STEEN & HAMILTON
Attorneys for U.S. Bank National Association
One Liberty Plaza
New York, NY 10006

    Howard S. Zelbo, Esq.

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
Attorneys for David Lichtenstein & Lightstone Holdings LLC
1633 Broadway
New York, NY 10019

    David M. Friedman, Esq.

GOLENBOCK EISEMAN ASSOR PELL & PESKOE LLP
Attorneys for Five Mile Capital
437 Madison Avenue
New York, NY 10022

    Jeffrey T. Golenbock, Esq.

SCHULTE ROTH & ZABEL LLP
Attorneys for Cerberus Capital Management, L.P.
919 Third Avenue
New York, NY 10022

    Adam C. Harris, Esq.

FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP
Attorneys for Centerbridge Partners, L.P.
One New York Plaza
New York, NY 10004

    Bonnie Steingart, Esq.

MEISTER SELIG & FEIN LLP
Attorneys for Line Trust Corporation Ltd. and Deuce Properties Ltd.
140 East 45th Street, 19th Floor
New York, NY 10017

    Stephen B. Meister, Esq.

REED SMITH LLP
Attorneys for Wells Fargo Bank, N.A.
599 Lexington Avenue
New York, NY 10022

    David A. Kochman, Esq.

**JAMES M. PECK**
**UNITED STATES BANKRUPTCY JUDGE**

### *Introduction*

The plaintiffs in each of the above-referenced adversary proceedings (hereinafter "Bank of America," "Five Mile Capital," or "Line Trust," as applicable) have filed motions to remand their respective action commenced in the Supreme Court of the State of New York (the "Supreme Court") and subsequently removed to this Court.

Bank of America commenced its action in the Supreme Court on June 16, 2009, seeking to enforce certain non-recourse carve-out guaranty agreements (the "Guaranty Agreements") entered into by Lightstone Holdings, LLC ("Lightstone") and David Lichtenstein ("Lichtenstein"). The Guaranty Agreements correspond to a series of mezzanine loans (the "Mezzanine Loans") that were made in connection with that certain mortgage loan (the "Mortgage Loan") secured by first priority liens on hotels owned by Extended Stay, Inc. or its affiliates (collectively, the "Debtors"). On July 8, 2009, Lightstone and Lichtenstein filed a Notice of Removal, removing the action to the United States District Court for the Southern District of New York. The District Court referred the action to this Court pursuant to its general order of referral. *See* Standing Order M61 Referring to the Bankruptcy Judges for the Southern District of New York Any or All

Proceedings Arising Under Title 11, dated July 10, 1984 (Ward, Acting C.J.).

Five Mile Capital commenced its action against Cerberus Capital Management, L.P. ("Cerberus"), Centerbridge Partners, L.P. ("Centerbridge") and GEM Capital Management, Inc. ("GEM") on June 23, 2009. By its action, Five Mile Capital seeks damages and declaratory and injunctive relief arising from the alleged breach of that certain Trust and Servicing Agreement (the "Trust and Servicing Agreement"), which governs each of Cerberus', Centerbridge's and GEM's relationship as a participant in the Mortgage Loan. Cerberus removed the action to the United States District Court for the Southern District of New York on July 14, 2009. The District court, in turn, referred the action to this Court pursuant to its general order of referral. *See id.*

Line Trust commenced its action against Lichtenstein, Lightstone, Bank of America, Cerberus, Centerbridge and others on June 24, 2009. Line Trust's action relates to a previous action brought against some of the Debtors, certain of their Mortgage Loan lenders and certain of their Mezzanine Loan lenders, as a result of which the Supreme Court granted a temporary restraining order in favor of Line Trust. (Line Trust voluntarily discontinued the previous action without prejudice as a result of the Debtors' bankruptcy filings.) In its action, Line trust asserts claims for, *inter alia*, breach of the implied covenant of good faith and fair dealing, tortuous interference with contract and breach of fiduciary duty relating to the Mortgage Loan, the Mezzanine Loans and the Guaranty Agreements. On July 8, 2009, Lightstone and Lichtenstein filed a Notice of Removal, removing the action to the United States District Court for the Southern District of New York. The District Court referred the action to this Court pursuant to its general order of referral. *See id.*

The parties presented their arguments to the Court at a hearing held on September 10, 2009 (the "Hearing"). At the Hearing, the Court took the motions to remand of Bank of America and Line Trust under advisement, with the intention of providing a ruling at the September 22, 2009 hearing in the Debtors' bankruptcy cases (the "September 22 Hearing").

The Court denied the Five Mile Capital motion to remand at the Hearing, stating that, based upon the papers submitted and the representations of counsel regarding the purpose of the litigation, the action filed by Five Mile Capital in the Supreme Court directly affects the plan process, thereby making it important for this Court to address in a coordinated fashion the interconnecting litigation issues and plan formulation issues. The Court reserved the right to provide additional support for its statements made at the Hearing in the event that Five Mile Capital decided to appeal its ruling.

Prior to the September 22 Hearing, the Court learned that Five Mile Capital may appeal the September 10, 2009 ruling denying its motion to remand. Accordingly, the Court expanded upon its earlier ruling and considered each motion to remand at the September 22 Hearing. The Court provided notice of its rulings from the bench, granting the motions to remand filed by Bank of America and Line Trust, and providing additional support for the bench ruling denying the motion to remand filed by Five Mile Capital. This Memorandum Decision ratifies and supplements the Court's rulings made during the September 22 Hearing.

### *Factual Background*

The following factual background is relevant to all three motions to remand.

In June 2007, an investor consortium led by Lichtenstein and his portfolio

6

company, Lightstone, acquired the Debtors, which comprise the largest owner/operator of mid-priced extended stay hotels in the United States. After the acquisition, Lichtenstein became the Debtors' president, chief executive officer and chairman.

The acquisition was financed through approximately $7.4 billion in loans, consisting of a $4.1 billion Mortgage Loan and ten tranches of junior Mezzanine Loans, designated A through J.

The Mortgage Loan was sold to a trust (the "Trust") formed pursuant to the Trust and Servicing Agreement, which issued certificates representing beneficial interests in the Trust and the Mortgage Loan collateral (each such holder of a beneficial interest in the Trust a "Certificateholder"). Five Mile Capital, Cerberus, Centerbridge and GEM currently are Certificateholders. There are 18 principal classes of Trust certificates and, pursuant to the Trust and Servicing Agreement, distributions are allocated to each class based on their respective priority. The certificates owned by Cerberus and Centerbridge are in classes senior to those owned by Five Mile Capital.

Some of the original Mezzanine Loans subsequently were securitized and resold to, among others, (1) Line Trust, which purchased debt corresponding to Mezzanine Loan G and (2) Bank of America, which purchased debt corresponding to Mezzanine Loans A through E. (Bank of America also is one of the lenders that made the Mezzanine Loans.)

The Mortgage Loan and the Mezzanine Loans generally are non-recourse. In connection with the acquisition, however, each of Lightstone and Lichtenstein, among others (collectively, the "Guarantors"), signed the Guaranty Agreements. Under the Guaranty Agreements, the Guarantors jointly and severally guaranteed up to $100 million in the aggregate of the borrower-Debtors' obligations in the event that any of the

7

borrower-Debtors committed so-called "bad boy" acts, including the filing of a voluntary bankruptcy petition.

On June 15, 2009, the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), each of which is currently pending before this Court and is being jointly administered at Case No. 09-13764 (JMP). Concurrently with their petitions, the Debtors filed a non-binding term sheet, representing an agreement in principle reached with certain significant Certificateholders (the "Term Sheet") relating to proposed terms of a plan of reorganization for the Debtors. Certain parties have challenged the authority of the Certificateholders to negotiate and enter into the Term Sheet.

### *Standard*

Under 28 U.S.C. § 1334, district courts have "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Under 28 U.S.C. § 1452(a), any party to a state court civil action may remove a claim or cause of action to the local district court provided that the claim or cause of action meets the jurisdictional requirements of § 1334. 28 U.S.C. § 1452(a). Standing Order M-61, dated July 10, 1984, of the United States District Court for the Southern District of New York refers to this Court any cases removed to the district court pursuant to § 1334. *See* Standing Order M61 Referring to the Bankruptcy Judges for the Southern District of New York Any or All Proceedings Arising Under Title 11, dated July 10, 1984 (Ward, Acting C.J.).

Generally, proceedings arising under title 11, and proceedings arising in a case under title 11 are referred to as "core" proceedings, whereas proceedings "related to" a

8

case under title 11 are referred to as "non-core" proceedings. *See Binder v. Price Waterhouse & Co., L.L.P. (In re Resorts Int'l, Inc.)*, 372 F.3d 154, 162 (3d Cir. 2004) (citing 1 COLLIER ON BANKRUPTCY, ¶ 3.02[2], at 3-35 (15th Ed. Rev.)).

"Bankruptcy core jurisdiction extends to all civil proceedings arising under title 11 or arising in a case under title 11." *Joremi Enters. v. Herskowitz (In re New 118th LLC)*, 396 B.R. 885, 890 (Bankr. S.D.N.Y. 2008); *see also*, 28 U.S.C. § 157(b)(1) (stating that "Bankruptcy judges may hear and determine . . . all core proceedings arising under title 11, or arising in a case under title 11 … ."). A core proceeding, as a general matter, is one that invokes a substantive right under the Bankruptcy Code, or could arise only in the context of a bankruptcy case. *See New 118th*, 396 B.R. at 890 (citations omitted).

"A proceeding is related to a case under title 11 … if the outcome might have a conceivable effect on the estate." *New 118th*, 396 B.R. at 890 (citing *Publicker Indus., Inc. v. United States (In re Cuyahoga Equip. Corp.)*, 980 F.2d 110, 114 (2d Cir. 1992)) (additional citations and internal quotation marks omitted). "An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *New 118th*, 396 B.R. at 890 (quoting *Pacor, Inc. v. Higgins* (*In re Pacor, Inc.*), 743 F.2d 984, 994 (3d Cir. 1984)).

Even if a court has subject matter jurisdiction over an action, it may nonetheless be required to abstain from hearing it. Under 28 U.S.C. § 1334(c)(2)

> [u]pon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under

9

> this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2).

Thus, a court must abstain if

> (1) the motion to abstain was timely; (2) the action is based on a state law claim; (3) the action is "related to" but not "arising in" a bankruptcy case or "arising under" the Bankruptcy Code; (4) Section 1334 provides the sole basis for federal jurisdiction; (5) an action is commenced in state court; (6) that action can be "timely adjudicated" in state court.

*In re WorldCom, Inc. Sec. Litig.*, 293 B.R. 308, 331 (S.D.N.Y. 2003). The principles of mandatory abstention apply to removed actions. *Mt. McKinley Ins. Co. v. Corning Inc.*, 399 F.3d 436, 446-47 (2d Cir. 2005).

Where mandatory abstention is not required, a court may exercise its discretion to nonetheless abstain from hearing a matter. 28 U.S.C. § 1334(c)(1). Similarly, a court may choose to equitably remand a claim or cause of action under 28 U.S.C. § 1452(b).

The above-described legal standards apply to all three motions to remand which the Court now will examine in turn.

### *Five Mile Capital*

Under the terms of the Trust and Servicing Agreement, the Servicer and Special Servicer (each as defined therein) are the sole representatives of the Trust and the Certificateholders. Section 7.7 of the Trust and Servicing Agreement provides in part that "[n]o Certificateholder shall have any right by virtue or by availing of any provision hereof to institute any action or proceeding at law or in equity or in bankruptcy or otherwise upon or under or with respect to the Trust … ." (Memorandum Opp'n at p. 5, note 6). Section 7.7 further provides that

10

> [i]t is understood and intended, and being expressly covenanted by each Certificateholder with every other Certificateholder and Trustee, that no one or more Certificateholders shall have any right in any manner whatever to affect, disturb or prejudice the rights of any other Certificateholder or to obtain or seek to obtain priority over or preference to any other Certificateholder or to enforce any right hereunder or under the Certificates, except in the manner provided herein and therein and for the equal, ratable and common benefit of all Certificateholders, subject to the priorities among Classes of Certificates set forth in this Agreement. For the protection and enforcement of the provisions of this Section, each and every Certificateholder and the Trustee shall be entitled to such relief as can be given either at law or in equity.

(Memorandum Opp'n at p. 5, note 6).

Five Mile Capital argues that, by engaging in pre-petition negotiations with the Debtors and seeking preferences over it and other junior Certificateholders, Cerberus, Centerbridge and GEM acted in direct violation of § 7.7 of the Trust and Servicing Agreement. (Compl. at ¶6). Five Mile Capital asserts that, due to its direct relation to the Trust and Servicing Agreement, the subject matter of its state court action deals with the rights and liabilities of Certificateholders in the Trust with respect to one another. (Compl. at ¶6). Therefore, Five Mile Capital maintains that the outcome of its state court action will have no bearing on the Debtors' bankruptcy cases and should be remanded. (Compl. at ¶6).

Cerberus and Centerbridge maintain that Five Mile Capital was aware of and participated in the pre-petition negotiations that culminated in the Term Sheet. (Memorandum Opp'n at p. 2). Five Mile Capital waited, however, until after the Debtors filed their bankruptcy cases "in order to maximize the potential of its lawsuit." (Memorandum Opp'n at p.2).

In its state court action, Five Mile Capital seeks, *inter alia*, a declaration that "would bring to an immediate halt any discussions between and among the Debtors,

[Cerberus, Centerbridge and any other Certificateholder] regarding a plan of reorganization." (Memorandum Opp'n at p.2). Thus, Cerberus and Centerbridge assert that the state court action "impacts the Court's authority to oversee the administration of the Debtors' estates and to perform one of this Court's core functions – confirmation of a plan of reorganization." (Memorandum Opp'n at p.2).

As this Court previously has explained, when determining whether a contract dispute is core, courts commonly consider whether the dispute involves a contract that is antecedent to the reorganization petition as well as the degree to which the proceeding is independent of the reorganization. *See JPMorgan Chase Bank v. Charter Communs. Operating, LLC (In re Charter Communs.)*, No. 09-11435 (JMP), slip op. at 10 (Bankr. S.D.N.Y. July 7, 2009) (quoting *Universal Oil Ltd. v. Allfirst Bank (In re Millenium Sea Carriers, Inc.)*, 419 F.3d 83, 97 (2d Cir. 2005)) (additional citations omitted).

Although the state court action relates to asserted breaches of a prepetition agreement, which factor generally weighs against finding core status, the close interconnection between the issues raised by the action and the bankruptcy process overwhelmingly renders this dispute core. *See Charter*, 409 B.R. at 655 (quoting *G.M. Crocetti, Inc. v. Trataros Constr., Inc. (In re G.M. Crocetti, Inc.)*, 2008 U.S. Dist. LEXIS 81604 (S.D.N.Y. 2008)).

Indeed, this Court need look no further than the admission of counsel to Five Mile Capital at the Hearing that, by the state court action, Five Mile Capital seeks to enjoin Cerberus, Centerbridge and GEM from negotiating with the Debtors. (Tr. 75: 11-13). The inability of such significant stakeholders to meaningfully participate in the plan process presents an issue that very clearly is unique to and uniquely affected by the

12

Debtors' bankruptcy cases. *See Luan Inv., S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.)*, 304 F.3d 223, 229 (2d Cir. 2002) (explaining that a proceeding can be core by virtue of its nature "if … the type of proceeding is unique to or uniquely affected by the bankruptcy proceedings"). Accordingly, for these reasons and for reasons stated at the Hearing, Five Mile Capital's motion to remand is denied.

### *Bank of America*

Bank of America claims that its state court action comprises a garden-variety contract action which is in no way "related to" the Debtors bankruptcy proceedings. (Memorandum Supp. at pp. 1-2). Pursuant to the Guaranty Agreements, Lightstone and Lichtenstein are non-debtors who are primary obligors and who have expressly waived and released any claim of indemnity or contribution against the Debtors. (Memorandum Supp. at p. 2). Accordingly, any result of the state court action will not affect the property available for distribution to the Debtors' creditors. (Memorandum Supp. at p.2).

Lightstone and Lichtenstein argue that the state court action involves an attempt by Bank of America to circumvent its subordinate position in a complex capital structure by suing on a $100 million non-recourse carve-out guaranty. (Memorandum Opp'n at p. 1). They maintain that the state court action is derivative of the Debtors' bankruptcy cases and, therefore, the doctrine of complete preemption requires that Bank of America's state law claims be recharacterized as arising under federal law and be heard in this Court. (Memorandum Opp'n at p. 8). According to Lightstone and Lichtenstein, the state court action arises in a bankruptcy case because of the "causal relation here between the filing" of the Debtors' bankruptcy petitions and the existence of Bank of America's claim under the Guaranty Agreements. (Memorandum Opp'n at p. 16).

13

Lightstone and Lichtenstein further argue that the Guaranty Agreements "encumber" the Debtors' access to bankruptcy and Lichtenstein's free exercise of his fiduciary duties to approve a bankruptcy filing and, therefore, should be void as a matter of public policy. (Memorandum Opp'n at p.12). They contend that such contractual impediments to commencing a bankruptcy case go to the very core of federal jurisdiction and constitute questions properly to be addressed by the bankruptcy court.

The Court disagrees and finds that Bank of America's state court action is not a core proceeding.

Despite the fact that the Guaranty Agreements were part of a highly structured transaction and were intended to impose adverse consequences on the Guarantors for committing any "bad boy" acts, the contract question is a straightforward one. The state court action is, as was argued by Bank of America at the Hearing, a standard contract case between two non-debtors that arises under New York law. (Tr. 15: 3-5). Such a case does not present bankruptcy issues and does not arise under the Bankruptcy Code.

Upon reading the Guaranty Agreements, it is clear that Bank of America's claim in the state law action is entirely independent of any claims Bank of America may have against the Debtors. Section 1.1 of the Guaranty Agreements provides, in relevant part, that each of Lightstone and Lichtenstein "hereby irrevocably and unconditionally covenants and agrees that it is liable for the Guaranteed Obligations as a primary obligor." (Memorandum Supp. at p. 3). Moreover, the Guaranty Agreements, at § 1.10, specifically provide that Lightstone and Lichtenstein have no right of offset or indemnity against the Debtors. (Memorandum Supp. at p. 4). Accordingly, Bank of America's efforts to recover the guaranteed obligations stand on their own and do not directly

impact the Debtors. Lightstone and Lichtenstein have cited to no authority, nor is the Court independently aware of any authority, supporting an argument that the Bankruptcy Code preempts a state law contract claim against a non-debtor who has independently guaranteed a debtor's obligations.

A claim "arises in" a case under the Bankruptcy Code only if the claim "would have no existence outside of the bankruptcy." *Rednel Tower, Ltd. v. Riverside Nursing Home (In re Riverside Nursing Home)*, 144 B.R. 951, 955 (Bankr. S.D.N.Y. 1992); *see also*, *Geruschat v. Ernst Young LLP (In re Seven Fields Dev. Corp.)*, 505 F.3d 237, 260 (3d Cir. 2007) (explaining that "claims that 'arise in' a bankruptcy case are claims that by their nature, not their particular factual circumstances, could only arise in the context of a bankruptcy case.") (citation omitted). To be sure, the Debtors' bankruptcy cases serve as the event of default triggering the Guarantors' liability under the Guaranty Agreements. However, claims such as this brought by a non-debtor against a non-debtor involving guarantees are not claims that by their nature could arise only in the context of a bankruptcy case. To the contrary, claims against non-debtor guarantors routinely are brought and adjudicated in state court. *See*, *e.g.*, *Bank Leumi Trust Co. of New York v. Rattet & Liebman*, 182 A.D.2d 541 (1st Dep't 1992). Thus, claims made by Bank of America do not "arise in" a case under the Bankruptcy Code.

The state court action also is not "related to" the Debtors' bankruptcy proceedings. A bankruptcy court has "related to" jurisdiction over an adversary proceeding if the proceeding "might have any 'conceivable effect' on the bankruptcy estate." <u>In re Chateaugay Corp.</u>, 213 B.R. 633, 638 (S.D.N.Y. 1997). Given the language of the Guaranty Agreements that insulates the Debtors from harm relating to the

potential liability of the Guarantors, the state law action has no foreseeable connection to the Debtors. Because Lightstone and Lichtenstein have no right of offset or indemnity against the Debtors, there is no conceivable effect of the state law action on the Debtors' bankruptcy estates. The Court does not, by this ruling, limit the rights of the Debtors to later claim that the state court action brought by Bank of America should be stayed under the Bankruptcy Code to the extent that the Debtors can demonstrate that Lichtenstein, in particular, plays a critical role in the reorganization process and that prosecution of the litigation against him is interfering with or may threaten the success of the reorganization.

With respect to the public policy argument, despite the fact that the Debtors' bankruptcy filing was the specified contingency leading to exposure under the Guaranty Agreements, the character of the action is not thereby converted to one arising under federal law. Under the circumstances presented, the disincentives to commencing a case under the Bankruptcy Code failed to function as intended and cases actually were filed. Because the Debtors now are in chapter 11 and Lichtenstein, as president, chief executive and chairman did, in fact, authorize such filings, public policy arguments relating to the guaranty claims are of minimal relevance.

Because the Court finds that it has no subject matter jurisdiction, it need not reach the issue of abstention. For the reasons stated, the motion to remand is granted.

*Line Trust*

Line Trust's claims in the Supreme Court relate to the alleged "tortious, conspiratorial, collusive, bad faith and predatory conduct" of the Mortgage Loan and Mezzanine Loan lenders, Lichtenstein, Lightstone and other defendants in concocting a scheme designed to induce Lichtenstein to cause the Debtors to file bankruptcy petitions.

16

(Memorandum Supp. at pp. 6-7). As to Lichtenstein and Lightstone, Line Trust alleges that Lichtenstein violated his fiduciary duties by filing the Debtors' bankruptcy petitions, with the assistance of Cerberus and Centerbridge. (Memorandum Opp'n at ¶ 8). Cerberus and Centerbridge assert that the Line Trust action in the Supreme Court is "a transparent attempt to generate negotiating leverage" by a party that is "hopelessly out of the money." (Cerberus Memorandum Opp'n at ¶6).

As described in its papers and at the Hearing, Line Trust seeks nothing more than money damages for state law claims of breach of contract or breach of the covenant of good faith and fair dealing, tortious interference with contract, breach of fiduciary duty (or aiding and abetting such a breach) and the application of the doctrine of equitable estoppel. (Memorandum Supp. at pp. 2-6; Tr. 121:8-14).

The defendants present arguments in opposition to remand similar to those raised by the defendants in the Bank of America action. Specifically, Cerberus and Centerbridge urge that the instant action is "inextricably intertwined with the Debtors' bankruptcy cases and … raises matters currently pending before this Court." (Cerberus Memorandum Opp'n at ¶ 6).

By attacking the propriety of the Debtors' bankruptcy filing and the proposed Term Sheet, Cerberus and Centerbridge argue, Line Trust has "launched an outright attack on matters pending in this Court." (Cerberus Memorandum Opp'n at ¶ 8). Cerberus and Centerbridge call attention to allegations in the complaint that Lichtenstein violated his fiduciary duties by authorizing the filing of the Debtors' bankruptcy petitions and that Cerberus and Centerbridge tortiously interfered with Line Trust's contracts and aided and abetted Lichtenstein's breach of fiduciary duty by agreeing to the "fraudulent

bankruptcy inducements" and thereby facilitating the bankruptcy filing (Cerberus Memorandum Opp'n at p. 8).

Finally, as they did in opposing remand of the Bank of America action, Lightstone and Lichtenstein argue that the Guaranty Agreements "encumber" the Debtors' access to bankruptcy and Lichtenstein's free exercise of his fiduciary duties to approve a bankruptcy filing and, therefore, should be void or unenforceable as a matter of public policy. (Lichtenstein Memorandum Opp'n at p. 13).

Despite these arguments, and consistent with findings made in connection with the decision to remand the Bank of America action, the Line Trust action is not a core proceeding. As set forth above, a state law claim by one non-debtor against another that derives solely from New York law does not arise under the Bankruptcy Code. Moreover, Line Trust's claim does not arise in a case under the Bankruptcy Code because, as a claim by a non-debtor against a non-debtor involving guarantees, the claim is external to the bankruptcy process. Indeed, while referencing the filing of the bankruptcy cases, the complaint goes to great lengths to limit its scope to state law-based claims. These are, without doubt, claims of the type that routinely are asserted in state court, and claims that most definitely exist outside of bankruptcy.

The Court does not have "related to" jurisdiction over the state court action. As explained above, a bankruptcy court has "related to" jurisdiction over an adversary proceeding where the proceeding might have a conceivable effect on the bankruptcy estate. Like the Bank of America action, the Debtors are not named in this action, although they have sought to intervene. The action may have been inspired by the bankruptcy, but it does not relate to the Debtors. The action's focus is money damages

from non-debtors. Accordingly, the state court action has no conceivable effect on the Debtors' bankruptcy estates except, perhaps, as the action may interfere with Lichtenstein's ability to manage the Debtors. This is a separate matter to be considered for cause shown.

The Court reiterates its previous findings, set forth earlier in this Memorandum Decision, regarding the public policy argument. Disincentives to the filing of bankruptcy cases and so-called non-recourse carve-out guarantees are within the domain of bankruptcy-remote structuring. Guarantees of the sort executed by Lichtenstein and Lightstone are intended to make bankruptcy cases less likely, to the point that they are remote risk factors for lenders. But here, the structure failed to achieve that objective. Despite foreseeable exposure to Lichtenstein, he authorized the Debtors' bankruptcy filings and opened himself up to claims of the type being made by Line Trust. Those claims are personal to Lichtenstein and Lightstone, and are not bankruptcy-related, except to the extent that bankruptcy filings are liability-creating events. The fact that such liability may be tied to bankruptcy filings does not lead to the conclusion that federal bankruptcy policy is implicated in any way. The question of whether such obligations, once triggered, are enforceable under New York contract law may be properly addressed by the Supreme Court without reference to the Debtors' bankruptcy cases.

Because the Court finds that it has no subject matter jurisdiction, it need not reach the issue of abstention. For the reasons stated, the motion to remand is granted.

The Court recognizes that the Debtors have filed motions to intervene in each of the above-captioned adversary proceedings. Inasmuch as the Court has granted the

motion to remand filed by each of Bank of America and Line Trust, the Debtors' motions to intervene in Adversary Proceeding No. 09-01353 (JMP) and Adversary Proceeding No. 09-01354 (JMP) need not be considered. The Debtors' motion to intervene in Adversary Proceeding No. 09-01367 (JMP) shall be heard and determined in due course.

The Court shall issue an appropriate order with respect to each motion to remand.

SO ORDERED.

Dated: New York, New York      __s/ James M. Peck_____
        October 7, 2009                  Honorable James M. Peck
                                        United States Bankruptcy Judge